**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 10-14175-CIV-MOORE/LYNCH

CENTER FOR BIOLOGICAL DIVERSITY;
DOGWOOD ALLIANCE; SIERRA CLUB;
GLOBAL JUSTICE ECOLOGY PROJECT;
INTERNATIONAL CENTER FOR
TECHNOLOGY ASSESSMENT; and
CENTER FOR FOOD SAFETY,

       Plaintiffs,

vs.

ANIMAL AND PLANT HEALTH
INSPECTION SERVICE; and
UNITED STATES DEPARTMENT OF
AGRICULTURE,

       Defendants,

ARBORGEN INC.; and BIOTECHNOLOGY
INDUSTRY ORGANIZATION,

       Intervenor-Defendants.
_____/


**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

       THIS CAUSE came before the Court upon Plaintiffs' Motion for Summary Judgment

(ECF No 77); Defendant Animal and Plant Health Inspection Service ("APHIS") and United

States Department of Agriculture's ("USDA") Motion for Summary Judgment and Response

in Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 82); Defendant-

Intervenor Biotechnology Industry Organization's ("Biotech") Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (ECF No. 81); Defendant-Intervenor Arborgen Inc.'s ("Arborgen") Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 83). These Motions are fully briefed and ripe for review.

UPON CONSIDERATION of the Motions, the briefs, the pertinent portions of the record, and being otherwise fully advised in the premises of the case, the Court enters the following Order.

## I.       BACKGROUND[1]

This case involves the administrative review of a federal agency's decision to administer certain permits to a biotechnology firm. On July 1, 2010, Plaintiffs Center for Biological Diversity, Center for Food Safety, Dogwood Alliance, Global Justice Ecology Project, International Center for Technology Assessment, and Sierra Club ("Plaintiffs") initially brought this action against APHIS and USDA alleging that APHIS did not comply with federal law in issuing certain permits to Arborgen. Arborgen is a biotechnology firm producing a genetically engineered hybrid specie of eucalyptus (the "GE eucalyptus") and is conducting ongoing research of the GE eucalyptus with a view toward potentially introducing them into the Southeastern United States.

On October 19, 2010, this Court instructed the Parties to brief the issue of whether Plaintiffs had standing to challenge these permitting decisions. October 10, 2010 Paperless

---

[1]       The facts here are taken from Plaintiffs' Statement of Material Facts (ECF No. (ECF No. 77-2) and the Second Amended Complaint (ECF No. 26), except where otherwise indicated. The material facts in this case are not in dispute.

Order (ECF No. 27).  The Court then issued an Order on Standing dismissing several of Plaintiffs' claims based on mootness and ripeness considerations.  Order on Standing (ECF No. 66).  The facts and procedural history of this matter are addressed in detail in that Order. On August 3, 2011, the Court dismissed several more claims based on the Parties' mutually stipulated dismissal.  August 3 Paperless Order (ECF No. 76).

Presently, the only issue remaining pertains to the second claim of Plaintiffs' Second Amended Complaint which challenges the issuance of Permits 08-011-106rm and 08-014-101rm ("Permits").  These Permits authorize Arborgen to plant the GE eucalyptus on 28 sites in seven states and allow flowering on 27 of these sites.  Before granting these permits, APHIS prepared an Environmental Assessment ("EA") for which it sought public comment. The EA considered two alternatives: granting the permits or taking no action.  Additionally, APHIS issued a decision notice and a finding of no significant impact ("FONSI").  Plaintiffs claim that APHIS violated the National Environmental Policy Act ("NEPA") when it issued these Permits because it did not comply with certain federal regulations.  They are seeking judicial review to set aside the permits, decision notice, and FONSI pursuant to the Administrative Procedure Act ("APA").  On June 6, 2011, Defendants lodged the administrative record with this Court. (ECF No. 76).  Both Plaintiffs and Defendants now move for summary judgment.

## II.     STANDARD OF REVIEW

### A.     Summary Judgment Standard of Review

Summary judgment may be entered only where there is no genuine issue of material fact.  Twiss v. Kury, 25 F.3d 1551, 1554 (11th Cir. 1994).  The moving party has the burden

3

of meeting this exacting standard. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

> A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials."

Ritchey v. S. Nuclear Operating Co., No. 10–11962, 2011 WL 1490358, at *1 (11th Cir. Apr.20, 2011) (quoting Fed. R. Civ. P. 56(c)(1)).  An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case.  Allen v. Tyson Foods, Inc.,121 F.3d 642, 646 (11th Cir. 1997).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Id.

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion.  Id.  "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

B.     APA Standard of Review

APHIS' permitting decisions are subject to the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347.  A plaintiff challenging an agency's NEPA decisions must bring his claim pursuant to the APA.  Sierra Club v. Van Antwerp, 526 F.3d 1353, 1360 (11th Cir. 2008).  The APA standard for review is exceedingly deferential.  Fund for Animals v. Rice, 85 F.3d 535, 541 (11th Cir. 1996).  Under this standard, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . .

4

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law . . . or without observance of procedure required by law." 5 U.S.C. § 706(2).  The arbitrary and capricious standard requires that the court "give[] deference to the agency decision by reviewing for clear error and by refraining from substituting its own judgment for that of the agency."  Sierra Club v. U.S. Army Corps of Eng'rs, 295 F.3d 1209, 1216 (11th Cir. 2002). Absent a showing of arbitrary action, a court must assume an agency has exercised discretion appropriately.  Kleppe v. Sierra Club, 427 U.S. 390, 412 (1976).

III.   ANALYSIS

NEPA is a procedural statute that requires the federal government to make fully-informed decisions with respect to actions implicating environmental consequences.  Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc., 435 U.S. 519, 557-58 (1978). It is intended "as a directive to all agencies to assure consideration of the environmental impact of their actions in decisionmaking."  Kleppe, 427 U.S. at 409 (internal quotation marks omitted).  However, NEPA "does not mandate particular results, but simply prescribes the necessary process."  Robertson v. Methow Valley Citizens Council, 490 U.S. 332, 350 (1989).

The Council on Environmental Quality ("CEQ") promulgated regulations implementing NEPA that are binding on all federal agencies.  40 C.F.R. § 1500.3; Robertson, 490 U.S. at 354.  APHIS also implemented NEPA by promulgating rules and procedures designed to assure consideration of environmental factors in its decisionmaking.  7 C.F.R. § 372.1.  Pursuant to NEPA and the regulations, there are three categories of agency action. First, actions involving an entire program or substantial program component that may significantly affect the environment require an environmental impact statement ("EIS").  40

5

C.F.R. § 1501.3; 7 C.F.R. § 372.5(a).  Second, an agency may also prepare an environmental

assessment–EA–to determine whether  a full-blown EIS is necessary.  40 C.F.R. § 1501.4; .7

C.F.R. § 372.5(b)(5).  Finally, neither an EA nor an EIS is required where the agency

determines the proposed action falls into a "categorical exclusion."  40 C.F.R. § 1501.4; 7

C.F.R. § 372.5(c).

Here, APHIS prepared an EA, finding an EIS would not be necessary because the

actions authorized by the Permits would not significantly affect the environment.  See

generally, Administrative Record (hereinafter, "AR" followed by Bates Number).  Plaintiffs

believe the process APHIS used in preparing the EA, decision notice, and FONSI violated

NEPA rules and they are therefore defective.  Plaintiffs claim that APHIS violated NEPA in

its preparation of these documents by (1) failing to consider a reasonable range of alternatives;

(2) failing to adequately analyze the cumulative effects in relation to other past and future

action with respect to the GE Eucalyptus; (3) failing to disclose conflicting scientific opinion

and information; and (4) failing to prepare an EIS required because of the action's highly

controversial nature.  Defendants contend that the Permits were issued in compliance with

federal regulations with respect to each of these arguments.  In determining whether APHIS

violated NEPA in preparing the EA, decision notice, and finding no significant impact, this

Court applies the arbitrary and capricious standard prescribed by the APA.  The Court will

now address each of these arguments in turn.

A.	It Was Not Arbitrary For APHIS to Consider Two Alternatives

Plaintiffs argue that APHIS should have considered additional alternatives in preparing

the EA; however, NEPA did not require APHIS to consider more than two alternatives.  An

EA must address appropriate alternatives to recommended courses of action addressing "the environmental impacts of the proposal and the alternatives in comparative form . . . ." Florida Wildlife Fed'n, 401 F. Supp. 2d 1298, 1330-31 (S.D. Fla. 2005) (quoting 40 C.F.R. § 1508.9(a)). "As a general matter, the range of alternatives that must be discussed . . . is a matter within an agency's discretion." Save Our Cumberland Mountains v. Kempthorne, 453 F.3d 334, 342 (6th Cir. 2006) (citation and internal citation marks omitted). "[W]hen an agency permissibly identifies few if any environmental consequences of a project, it correspondingly has fewer reasons to consider environmentally sensitive issues." Id. "So long as 'all reasonable alternatives' have been considered and an appropriate explanation is provided as to why an alternative was eliminated, the regulatory requirement is satisfied." Native Ecosystems Council vs. U.S. Forest Servs., 428 F.3d 1233, 1246 (N.D. Ga. 2008) (footnote omitted).

There is no brightline rule requiring an agency to consider more than two alternatives, and APHIS is not required to address every conceivable alternative. All that is necessary is that the agency consider reasonable alternatives that meet the purpose and need of the proposed action. When APHIS receives applications for the development or use of genetically engineered organisms, implementing regulations require the APHIS administrator to respond by either granting or denying the application. AR1502; 7 C.F.R. § 340.4(e). APHIS received an application for these Permits from Arborgen. The applicants had a commercial purpose, seeking to conduct research in its development of a eucalyptus plant that could tolerate cold environments and that had reduced fertility. AR1502. Taking this purpose into account, APHIS then carefully considered supplemental permit conditions that it could impose that

would address environmental concerns it had identified. AR1659-60 (listing three requirements proposed by APHIS to better monitor the testing sites); AR1712-13 (Appendix III: Proposed Supplemental Permit Conditions); AR1930 (Appendix V: Proposed Supplemental Permit Conditions). APHIS then granted the application, indicating it would only be issued in conjunction with the Appendix V supplemental conditions. AR24968. Furthermore, APHIS had also evaluated supplemental considerations in a previous EA that allowed flowering of the GE Eucalyptus on a smaller plot. AR232. Given the very limited impact and scope of these Permits, these two alternatives were sufficient. This Court sees no arbitrary or capricious conduct in APHIS' consideration of an action and no-action alternative.

      B.      <u>APHIS Did Not Fail to Deal With Cumulative Effects</u>

      Plaintiffs assert that APHIS did not consider the cumulative effects of the permitted action with respect to other related, reasonably foreseeable actions. 40 C.F.R. § 1508.27(b)(7) (agency consideration includes "[w]hether the action is related to other actions with individually insignificant but cumulatively significant impacts."). The thrust of Plaintiffs' argument is that, because Arborgen ultimately aims toward deregulated status of the GE Eucalyptus, an EIS is required. Plaintiffs are merely regurgitating their original flawed argument. NEPA regulations specifically contemplate a regime in which field testing is permitted on a limited basis so scientific information may be gathered for future decisions that might permit broader or even deregulated planting. APHIS did not need to address, as Plaintiff calls the deregulation petition, "the elephant in the room," because it is completely acceptable for a company to do preliminary testing that produces empirical data to support future applications or petitions for more extensive use. The Court cannot identify any

8

offensive or arbitrary conduct in this course of action.

To the extent Plaintiffs argue APHIS did not take into account the cumulative effects of the twenty-eight test sites, the administrative record shows that is false. The regulations only require a "brief discussion" of environmental impacts. 40 C.F.R. § 1508.9. APHIS directly addressed a comment that voiced concern about the collective impact of numerous sites. AR24874. It noted that the planting sites are widely dispersed, covering 900 miles east to west, and with at least three miles between any planting sites. Only 330 acres of the GE Eucalyptus would be planted in total–accounting for 00.00184% of all yearly pine plantings in southern forests. Furthermore, regular Eucalyptus acreage is low in the regions being tested. Additionally, contrary to Plaintiffs' aspersions, the record shows APHIS considered tree movement, and briefly addressed it in the EA. AR24866. The discussion afforded the potential collective impact is reasonable and does not suggest any arbitrary or capricious action.

    C.    APHIS' Handling of Comments Not Arbitrary and Capricious

As an initial matter with respect to EA comments, this Court finds that APHIS' handling of the comments was reasonable. As Plaintiffs note, APHIS received 12,462 comments opposing the permits. AR24863. Many of these comments embody the original flaw contained in Plaintiffs' original case – conflating limited testing with deregulation. Moreover, many of these comments were redundant. "[T]here is no requirement that [an agency] individually address all public comments." Wildlaw vs. U.S. Forest Serv., 471 F. Supp. 2d 1221, 1248 (M.D. Ala. 2007). It also acceptable for an agency to respond to various comments in summarized form. See 40 C.F.R. § 1503.4b. The record reflects that APHIS

9

responded to the basic concerns of the commenters and addressed them accordingly.

Plaintiffs further assert that APHIS did not properly consider or disclose critical comments from other agencies and officials.[2]  Specifically, Plaintiffs assert that comments offered by the Florida Exotic Pest Plant Council ("FEPPC"); the Georgia Department of Natural Resources ("GDNR"); the Louisiana Department of Agriculture and Forestry ("LDAF"); the Department of Interior ("DOI"); and the U.S. Forest Service, were not adequately addressed or disclosed. This argument is unavailing for two reasons.  First, NEPA regulations require that an agency list the "agencies and persons consulted." 40 C.F.R. § 1508.9.  APHIS did list the agencies with whom it consulted: U.S. Forest Service and U.S. Fish & Wildlife Service.  AR24990.  APHIS was under no obligation to formally list commenting agencies or persons.

Second, APHIS did consider and respond to the comments of these agencies and organizations.  An agency should "consider and respond to the comments of other agencies." See Custer Cnty. Action Ass'n v. Garvey, 256 F.3d 1024, 1038 (10th Cir. 2001).  The record shows that APHIS did respond, either directly or indirectly, to the issues raised by the aforementioned organizations and agencies.  For example, FEPPC voiced a concern on the potential invasiveness of the genetically altered species.  APHIS addressed invasiveness in the FONSI and EA.  AR24867; AR2497-72.  GDNR commented on potential impacts on hydrology, soil chemistry, native biodiversity, and ecosystem functions.  AR24574.  APHIS

---

[2]     Plaintiffs also point out the agency did not respond to its own comments with respect to the dergulation petition.  The petition involves a separate action and APHIS was not required to disclose these comments.  In any event, the record indicates that APHIS did discuss the issues identified therein.

10

responded to each of these concerns in turn.[3]  Addressing these concerns is all NEPA requires.

Even if APHIS did not directly address every single scientific opinion in public comments, that would not make the EA deficient.  Earth Island Inst. v. Carlton, 626 F.3d 462, 472 (9th Cir. 2010) (remarking that an agency need not respond to every single scientific study or comment).  Moreover, the existence of opposing scientific views is not fatal to the NEPA and APA analysis.  See Hughes River Watershed Conservancy v. Johnson, 165 F.3d 283, 288 (4th Cir. 1999) ("Although an agency should consider the comments of other agencies, it does not necessarily have to defer to them when it disagrees. Agencies are entitled to rely on the view of their own experts.") (citations omitted).

Thus, Plaintiff has not established that APHIS acted arbitrarily or capriciously in handling various comments.

D.    APHIS Need Not Have Performed EIS Where Action Purported to be Highly Controversial

Plaintiffs argue that an EIS was necessary because a substantial dispute surrounded the proposed actions and they were highly controversial.  In determining whether an EIS is required, an agency should consider "[t]he degree to which the effects on the quality of the human environment are likely to be highly controversial."  40 C.F.R. § 1508.27(b)(4).  A proposal may be "highly controversial" where there is a "substantial dispute [about] the size, nature, or effect of the major Federal action rather than the existence of opposition to a use."  Native Ecosystems Council, 428 F.3d at 1240.  "A substantial dispute exists when evidence ...

_____

[3]       APHIS also responded to concerns by LDAF, DOI, and the U.S. Forest Service. See, e.g., AR24872-73 (addressing concerns relating to the scale of the plantings with respect to hydrology); AR24870-71 (responding to fears about cross-breeding between the hybrid and potentially sexually compatible species); AR24868 (discussing possible germination of seed).

casts serious doubt upon the reasonableness of an agency's conclusions." Nat'l Parks & Conservation Ass'n v. Babbitt, 241 F.3d 722, 736 (9th Cir. 2001)

Though Plaintiffs are very vocal about their opposition to this lack of an EIS, there is no substantial basis for real controversy. First, this is a very limited action – most of the "controversy" arises in relation to the possibility of deregulation. Second, the scientific concerns mentioned *supra* were all adequately addressed in the EA and do not "cast serious doubt upon the reasonableness" of APHIS' finding of no significant impact. Third, the reports from the Government Accountability Office ("GAO") and Office of Inspector General ("OIG") referenced by Plaintiffs have no bearing on this matter. Neither of these reports address or reference the presently disputed EA, they only address the agency's handling of genetically engineered organisms generally.

Finally, the existence of a "controversy" is one of several factors in weighing whether or not to prepare an EIS. Even if this Court found there was a legitimate controversy, in light of the entire record, that finding would not be fatal to APHIS' EA or FONSI. See 40 C.F.R. § 1508.27(b).

Based on the record in its entirety, this Court does not view any action taken by APHIS to be arbitrary and capricious. Therefore, summary judgment is warranted.

## IV.    CONCLUSION

For the reasons stated above, it is hereby

ORDERED AND ADJUDGED that Plaintiffs' Motion for Summary Judgment (ECF No. 77) is DENIED. It is further

ORDERED AND ADJUDGED that Defendants APHIS and USDA's Motion for

12

Summary Judgment (ECF No. 82); Biotech's Motion for Summary Judgment (ECF No. 81); and

Arborgen's Motion for Summary Judgment (ECF No. 83) are GRANTED.  The Clerk of the

Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 6th day of October, 2011.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record